O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HAZEL L. TYISKA,                          )    NO. CV 11-03957-MAN
                                          )
                Plaintiff,                )
                                          )    MEMORANDUM OPINION
        v.                                )
                                          )    AND ORDER
MICHAEL J. ASTRUE,                        )
Commissioner of Social Security,          )
                                          )
                Defendant.                )
_____)

     Plaintiff filed a Complaint on May 18, 2011, seeking review of the
denial of plaintiff's application for supplemental security income
("SSI").  On June 23, 2011, the parties consented, pursuant to 28 U.S.C.
§ 636(c), to proceed before the undersigned United States Magistrate
Judge.  The parties filed a Joint Stipulation on May 9, 2012, in which:
plaintiff seeks an order reversing the Commissioner's decision and
remanding this case for the payment of benefits or, alternatively, for
the correction of legal errors; and the Commissioner requests that his
decision be affirmed.

//

//

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On October 5, 2007, plaintiff protectively filed an application for SSI.  (Administrative Record ("A.R.") 17.)  Plaintiff, who was born on May 9, 1962 (A.R. 100),[1] claims to have been disabled since January 1, 2005 (A.R. 17), due to schizophrenia, insomnia, nervousness, anxiety, nightmares of past assault, irritability, paranoia, visual and auditory hallucinations, difficulties understanding and remembering, and a fear of crowds (*see* A.R. 20, 41, 56, 61).

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 17, 56-59, 61-66), plaintiff requested a hearing (A.R. 12-13).  On July 23, 2009, plaintiff, who was represented by an attorney, appeared and testified at a hearing before Administrative Law Alexander Weir, III (the "ALJ").  (A.R. 26-51.)  Vocational expert Sandra Trost also testified.  (*Id.*)  On August 18, 2009, the ALJ denied plaintiff's claim (A.R. 17-25), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-6).  That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff has not engaged in substantial gainful activity since October 5, 2007, the application date.  (A.R. 20.)  The ALJ also found that plaintiff does not have any physical impairments, but she does have the severe mental impairment of psychotic disorder.

---

[1]   On the alleged disability onset date, plaintiff was 42 years old, which is defined as a younger individual.  *See* 20 C.F.R. § 416.963.

2

(*Id.*)  The ALJ further found that plaintiff's mental impairment causes "mild limitations on [her] activities of daily living and social functioning" and "moderate limitations in [her] ability to maintain concentration, persistence, or pace," but her mental impairment "has not caused any episodes of decompensation of extended duration." (*Id.*)  The ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.925, 416.926).  (A.R. 21.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels but with the following nonexertional limitations:  [plaintiff] cannot engage in complex tasks and will have moderate limitations in maintaining attention and concentration." (A.R. 22.)  Based upon his RFC assessment for plaintiff and the testimony of the vocational expert, the ALJ found that plaintiff was capable of performing her past relevant work as a hospital cleaner and home attendant, because "[t]his work does not require the performance of work-related activities precluded by [plaintiff]'s [RFC]." (A.R. 24.)

Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since October 5, 2007, the date her application was filed.  (A.R. 25.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's

3

decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which

4

exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ failed to give clear and convincing reasons for finding plaintiff's testimony regarding her mental limitations to be not credible.[2] (Joint Stipulation ("Joint Stip.") at 4-14, 18.)

**I.   The ALJ Failed To Give Clear And Convincing Reasons For Finding Plaintiff's Testimony Regarding Her Mental Limitations To Be Not Credible.**

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. § 416.929(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of

---

[2]   Plaintiff initially alleged both mental and physical limitations. However, because plaintiff does not challenge the ALJ's finding that her "allegation of physical impairments [is] not substantiated by any medical evidence," the Court does not address plaintiff's claims of physical limitations. (A.R. 23.)

5

malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883.  The factors to be considered in weighing a claimant's credibility include:   (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 416.929(c).

An ALJ may not rely on a plaintiff's daily activities to support an adverse credibility determination when those activities do not affect the claimant's ability to perform appropriate work activities on an ongoing and daily basis.  Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990).  As the Ninth Circuit noted in Lester v. Chater, the ALJ must evaluate claimant's "'ability to work on a *sustained* basis.'"  81 F.3d 821, 833 (9th Cir. 1995)(emphasis in original; citation omitted).  A claimant need not be "utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)(internal citations omitted).

At the July 23, 2009 administrative hearing, plaintiff testified, *inter alia*, that she:   is depressed and nervous; has difficulty

remembering, understanding, and keeping pace; and fears going outside by herself.  (A.R. 35, 37, 41.)  Plaintiff testified that she last worked approximately 10-15 years ago as a custodian and nurse's aide.  (A.R. 32-33.)  She also testified that "a couple of years ago" she did some "odd jobs" for income, including fixing people's hair and working as a home attendant.  (A.R. 34-35.)  However, she stopped performing these activities due to physical problems with her hands.  (A.R. 35.)  When asked by the ALJ, "What's the main thing that keeps you from working?" plaintiff responded, "Well, I had applied for a job but didn't –- my abilities, I'm too slow.  I'm not fast enough for them.  And because of my understanding."  (A.R. 41.)

With respect to her daily activities, plaintiff testified that she is able to clean her room, change her bed linens, dress herself, bathe, and handle her own money.  (A.R. 32, 39-40.)  Although plaintiff is able to read, she testified that she "do[es]n't really understand what [she is] reading . . . .  [S]omebody has to help [her] understand."  (A.R. 39.; *see also* A.R. 31.)  Similarly, when watching television, plaintiff testified that she does not always remember the things she sees and hears.  (A.R. 39.)  Plaintiff also testified that she takes walks with her landlord, with whom she lives, and accompanies her to shop.  (A.R. 39-40.)  Plaintiff's landlord cooks for her and washes her laundry.  (*Id.*)

Plaintiff testified that her medications help just a "little" with her depression and nerves.  (A.R. 37.)  She noted, for example, that she does not "[rock] as bad[ly] as [she] used to."  (*Id.*)  Plaintiff also testified that she no longer experiences visual and auditory

7

1  hallucinations when taking prescribed medication.  (A.R. 38.)

2

3      The ALJ found that while plaintiff's severe mental impairment of

4  psychotic  disorder  "does  limit  certain  aspects  of  [plaintiff]'s

5  functioning,  it  does  not  provide  limitations  so  severe  as  to  prevent

6  [plaintiff] from basic work abilities."  (A.R. 23.)  As the ALJ cited no

7  evidence  of  malingering  by  plaintiff,  his  reason(s)  for  rejecting

8  plaintiff's testimony must be clear and convincing.

9

10     In  his  decision,  it  appears  that  the  ALJ  rejected  plaintiff's

11 subjective  symptom  testimony  because:  (1)  "the  record  does  not  .  .  .

12 fully  show  that  [plaintiff]'s  symptoms  lasted  for  a  period  of  over  12

13 months"; (2)  plaintiff's  condition  improved  over  the  course  of  her

14 treatment; and (3) plaintiff's daily activities demonstrate that she "is

15 capable of a wide range of activities of daily living."[3]  (A.R. 23-24.)

16

17     Addressing his first reason for finding plaintiff's testimony to be

18 not credible, the ALJ noted that "[plaintiff]'s record reflects that

19 [she] was treated from August 28, 2007 through May 28, 2008, a period of

20 less than a year.  Accordingly, [the ALJ concluded that] the record does

21 not  .  .  .  fully show that [plaintiff]'s symptoms lasted for a period of

22 over 12 months."  (A.R. 23.)

23

24     Following the ALJ's decision, however, plaintiff submitted, *inter*

25

_____

26     [3]    While the Commissioner now offers other reasons to explain the
   ALJ's credibility determination, the Court cannot entertain these post
27 hoc rationalizations.  *See, e.g.,* <u>Connett</u>, 340 F.3d at 874 (finding that
   "[i]t was error for the district court to affirm the ALJ's credibility
28 decision based on evidence that the ALJ did not discuss").

*alia*, additional treatment notes, which were considered and made part of the Administrative Record by the Appeals Council.[4]   (A.R. 1-6.)   The first treatment note, dated August 25, 2008, stated that plaintiff was experiencing insomnia, post traumatic stress disorder ("PTSD") flashbacks, as well as increased depression, anxiety, and irritability. (A.R. 217.)   Plaintiff was assessed with a Global Assessment of Functioning ("GAF") score of 50.   (*Id.*)   An October 20, 2008 treatment note noted that plaintiff was continuing to experience insomnia, PTSD flashbacks, and depression.   (A.R. 216.)   Plaintiff was again assessed with a GAF score of 50.   (*Id.*)   Lastly, in a March 10, 2009 treatment note, it was noted that plaintiff was experiencing symptoms of insomnia, depression, and flashbacks.   (A.R. 215.)

    The additional treatment records submitted by plaintiff undermine the ALJ's first reason for finding plaintiff to be not credible, because they show that plaintiff's symptoms have lasted for a period of over twelve months.   Accordingly, in view of the additional evidence, this reason cannot constitute a clear and convincing reason for rejecting plaintiff's testimony.[5]

_____

[4]    When, as in this case, the Appeals Council considers additional evidence submitted by plaintiff, the additional evidence becomes part of the Administrative Record for purposes of the Court's review.   *See* <u>Harman v. Apfel</u>, 211 F.3d 1172, 1180 (9th Cir. 2000) (finding additional materials submitted to the Appeals Council may be considered, because the Appeals Council addressed them in the context of denying claimant's request for review); *see also* <u>Ramirez v. Shalala</u>, 8 F.3d 1449, 1452 (9th Cir. 1993)(noting that "we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council").

[5]    Additionally, the state agency psychiatric consultant, Paul Balson, M.D., whose opinion the ALJ gave great weight, opined that if plaintiff continued with treatment and adhered to her medications (A.R. 192), she would "be able to attain/sustain SRT [(simple repetitive

9

The ALJ's second reason for finding plaintiff to be not credible -- *to wit*, that plaintiff's condition improved over the course of treatment -- is unavailing, particularly in view of the additional evidence submitted by plaintiff.   In support of his second ground for discrediting plaintiff, the ALJ noted that plaintiff's progress notes from April and May 2008 "indicated significant improvement." (A.R. 23.) The ALJ stated, for example, that plaintiff's initial GAF score rose from 44 to scores of 50-55.   (*Id.*)   The ALJ also concluded that plaintiff "reported a decrease in hallucinations," "that she was feeling better," and "that the medication was helping her." (*Id.*)

The ALJ has overstated the improvement in plaintiff's GAF scores, however.   While it is true that plaintiff's social worker Angela Vergara, MSW, gave plaintiff a GAF score of 44 on August 28, 2007 (A.R. 173), plaintiff's psychiatrist, Richard D. King, M.D., gave plaintiff a GAF score of 50 *on that same day* (A.R. 174).   To the extent the ALJ suggests that plaintiff's condition improved because she was given GAF scores of 44 and 50 on the same day, the ALJ's reasoning in unpersuasive.   The evidence, when fairly viewed, shows that plaintiff's GAF scores, as assessed by her treating physician, rose from a score of 50 to 55 for a few months (*see, e.g.,* A.R. 178 (11/26/07 – 55); A.R. 177 (2/26/08 – 55)), and then subsequently decreased to a score of 50 for the remainder of plaintiff's course of treatment (*see, e.g.,* A.R. 198

tasks)] within [a] normal work week by 08/08" (A.R. 195).   Put differently, Dr. Balson believed that plaintiff's mental limitations would affect her ability to engage in substantial work until August 2008.   In so finding, Dr. Balson noted that plaintiff's condition was improving with treatment.   As noted *supra*, however, plaintiff's symptoms continued to persist beyond August 2008, and thus, it appears that plaintiff's symptoms lasted for at least a period of 12 months.

(3/25/08 – 50); A.R. 197 (4/30/08 – 50); A.R. 196 (5/28/08 – 50)).[6] Accordingly, contrary to the ALJ's assertion, plaintiff's GAF scores do not demonstrate significant improvement; rather, at best, they show a period of brief improvement.

Likewise, while it is true that plaintiff reported some improvement with medication, the additional treatment notes show that plaintiff continued to experience insomnia, flashbacks, and depression.  In fact, the August 25, 2008 treatment note indicates that plaintiff was experiencing *increased* depression, anxiety, and irritability.[7]  (A.R. 217.)  Accordingly, considering the record as a whole, including the additional evidence submitted by plaintiff, the ALJ's second reason does not constitute a clear and convincing reason for rejecting plaintiff's testimony.

The ALJ's last reason for rejecting plaintiff's testimony is also unavailing.  The ALJ states that "[plaintiff] is capable of a wide range of activities of daily living." (A.R. 24.)  The ALJ notes, for example, that "[plaintiff] is able to take care of her own personal hygiene, clean her room, go shopping, and go out for walks.  She is able to get

---

[6]      Further, the additional treatment records submitted by plaintiff show that Dr. King continued to assess plaintiff with a GAF score of 50. (*See, e.g.*, A.R. 217 (8/25/08 – 50);  A.R. 216 (10/20/08 – 50).)

[7]      While it is true that plaintiff testified at the administrative hearing that she did not experience visual and auditory hallucinations with her present medication, it is unclear when plaintiff began taking that medication.  Based upon the additional treatment notes submitted by plaintiff, however, it appears that she was experiencing some form of auditory and/or visual disturbances in the form of "flash backs" until at least March 2009.

along with her landlord, and they do activities together." (*Id.*) The ALJ also notes that in the last ten years, plaintiff has performed "odd jobs" and "only stopped working because of physical impairments (which [the ALJ] found to be unsubstantiated) and not mental impairments." (*Id.*) The ALJ thus determined that plaintiff's mental impairment caused only "mild limitations on [plaintiff]'s activities of daily living and social functioning."[8] (*Id.*)

Although not entirely clear, it appears that the ALJ found plaintiff to be not credible because her daily activities were inconsistent with her alleged mental limitations. However, the ALJ does not articulate *how* plaintiff's daily activities are at odds with her alleged mental limitations. Further, the ALJ fails to explain how plaintiff's basic activities and light household chores translate into the ability to perform full-time work. *See* <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001)(noting that the "mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"). Therefore,

---

[8]     In so finding, the ALJ gave great weight to the opinion of state agency psychiatric consultant Dr. Balson. (A.R. 24.) However, and perhaps significantly, although Dr. Balson completed a mental residual functional capacity assessment for plaintiff, he did not complete Part III, "Rating of Functional Limitations," of the psychiatric review technique form. (*See* A.R. 190.) Accordingly, it is unclear which medical opinion informed the ALJ's finding with respect to plaintiff's functional limitations in daily living and social functioning.

        Moreover, it does not appear that Dr. Balson was given plaintiff's complete medical record prior to completing his assessment, as evidenced by his statement that plaintiff had "no documented mental health issues prior to 08/07." (A.R. 192.) Contrary to Dr. Balson's statement, the record shows that plaintiff received mental health treatment in 2003. (*See, e.g.,* A.R. 20, 168, 175.)

the ALJ's reason is not a clear and convincing reason, as required, for finding plaintiff to be not credible.

Moreover, to the extent the ALJ discredits plaintiff because she stopped working due to "physical impairments . . . and not mental impairments," the ALJ's reasoning is unpersuasive.  (A.R. 24.)  While it is true that plaintiff testified she stopped working at one of her "odd jobs" due to physical reasons, plaintiff later testified that she had applied for a job but could not meet the demands of the job due to her mental limitations.  Specifically, when asked by the ALJ, "What's the main thing that keep you from working?" plaintiff responded, "Well, I had applied for a job but didn't -- my abilities, I'm too slow.  I'm not fast enough for them.  And because [of] my understanding." (A.R. 41.)  Taken in context, and contrary to the ALJ's finding, plaintiff's testimony was that her mental limitations, as opposed to her physical limitations, prevented her from currently performing sustained work.

Accordingly, for the aforementioned reasons, the ALJ failed to give clear and convincing reasons for discrediting plaintiff's testimony.

**II.   Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179

("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record). On remand, the ALJ must correct the above-mentioned deficiencies and errors. In so doing, the ALJ may determine that a consultative examination, based upon a *complete* review of the medical record, is appropriate under the circumstances.

///
///
///
///
///
///
///
///
///
///
///

14

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  May 25, 2012

_Margaret A. Nagle_

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

15